**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X

In the Matter of the Application of,

                                                       Case No.: 14-cv-06087

TAPIMMUNE INC.,

                        Petitioner,

         -against-

MICHAEL GARDNER,

                        Respondent.

------------------------------------------------------------------X

**REPLY BRIEF IN SUPPORT OF PETITIONER'S**
**MOTION TO CONFIRM THE ARBITRATION AWARD AND IN OPPOSITION TO**
**RESPONDENT'S MOTION TO VACATE THE ARBITRATION AWARD**

GANA LLP
Adam J. Gana
Adam J. Weinstein
345 Seventh Avenue, 21st Floor
New York, New York 10001
Tel.: (212) 776-4251
Email: agana@ganallp.com
                aweinstein@ganallp.com

*Attorneys for Petitioner*

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES**                                                                III

**PRELIMINARY STATEMENT**                                                                1

**FACTUAL BACKGROUND**                                                                   2

**JURISDICTION**                                                                         6

**I.    Petitioner's Choice of Federal Court Is Not In Conflict With Any State Court Action  6**

**II.   The New York Supreme Court Did Not Rule on The Merits of the Arbitration Claim  8**

**STANDARD OF REVIEW**                                                                   11

**I.    The Arbitrator Did Not Exceed Her Powers**                                       12

**II. No Evidence Has Been Presented of the Arbitrator's Partiality**                    13

**III.  Respondent's Claim of "Manifest Disregard of Law" Must Be Denied**              15
    A.   TapImmune Proved Fraud in the Inducement at the Arbitration Hearing      16
    B.   The Arbitrator Had Grounds to Order Monetary Relief                          19

**CONCLUSION**                                                                           21

# TABLE OF AUTHORITIES

**Cases**

*ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co.,*
  307 F.3d 24 (2d Cir. 2002).................................................................................... 10, 16

*Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp.,*
  274 F.2d 805 (2d Cir. 1960)............................................................................................ 12

*Andros Compania Maritima, S.A. v. Marc Rich & Co., A.G.,*
  579 F.2d 691 (2d Cir.1978)............................................................................................. 14

*Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi, A.S.,*
  492 F.3d 132 (2d Cir. 2007)............................................................................................ 14

*Ballantine Books Inc. v. Capital Distrib. Co.,*
  302 F.2d 17 (2d Cir. 1962)........................................................................................... 8, 9

*Ballow Brasted O'Brien & Rusin P.C. v. Logan,*
  435 F.3d 235 (2d Cir. 2006)............................................................................................ 20

*Banco de Seguros del Estado v. Mut. Marine Office, Inc.,*
  344 F.3d 255 (2d Cir. 2003)............................................................................................ 13

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.,*
  98 F.3d 13 (2d Cir. 1996)................................................................................................ 18

*Burchell v. Marsh,*
  58 U.S. 344, 17 How. 344, 15 L.Ed. 96 (1855) ............................................................. 12

*Commonwealth Coatings Corp. v. Cont'l Cas. Co.,*
  393 U.S. 145, 89 S. Ct. 337, 21 L. Ed. 2d 301 (1968)................................................... 14

*Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co.,*
  529 U.S. 193, 120 S. Ct. 1331, 146 L. Ed. 2d 171 (2000).......................................... 6, 8

*Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S,*
  333 F.3d 383 (2d Cir. 2003)..................................................................................... 11, 16

*EDP Hosp. Computer Sys. v. Bronx–Lebanon Hosp. Ctr.,*
  212 A.D.2d 569, 622 N.Y.S.2d 556 (2nd Dep't 1995) ................................................... 11

*Farrell v. Kiernan,*
  213 A.D.2d 373, 623 N.Y.S.2d 314 (2nd Dep't 1995) ................................................... 11

*First Options of Chicago, Inc. v. Kaplan,*
  514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)................................................ 11

*Frontier-Kemper Constructors, Inc. v. Am. Rock Salt Co.,*
  224 F. Supp. 2d 520 (W.D.N.Y. 2002) .......................................................................... 18

*Giller v. Oracle USA, Inc.,*
  512 F. App'x 71 (2d Cir. 2013) *cert. denied,* 134 S. Ct. 531, 187 L. Ed. 2d 394 (2013) ......... 17

*Guggenheimer v. Ginzburg,*
    43 N.Y.2d 268, 372 N.E.2d 17 (1977)......................................................... 10, 11, 16

*International Cabletel Inc. v. Le Groupe Videotron Ltee,*
    978 F.Supp. 483 (S.D.N.Y.1997) ...................................................................... 18

*Irving S. Cohen, Inc. v. Glen Raven Cotton Mills, Inc.,*
    263 F. Supp. 107 (S.D.N.Y. 1967) ...................................................................... 7

*Jamie B. v. Hernandez,*
    274 A.D.2d 335, 712 N.Y.S.2d 91 (1st Dep't 2000) .......................................... 10

*Koob v. IDS Financial Servs.,*
    213 A.D.2d 26, 629 N.Y.S.2d 426 (1st Dep't 1995) .......................................... 10

*Lama Holding Co. v. Smith Barney Inc.,*
    88 N.Y.2d 413, 421 668 N.E.2d 1370 (1996)..................................................... 19

*Lucent Technologies Inc. v. Tatung Co.,*
    379 F.3d 24 (2d Cir. 2004)................................................................................. 14

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker,*
    808 F.2d 930 (2d Cir. 1986).............................................................................. 15

*Morelite Const. Corp. (Div. of Morelite Elec. Serv.) v. New York City Dist. Council Carpenters Ben. Funds,*
    748 F.2d 79 (2d Cir. 1984)................................................................................ 14

*Morris v. Port Auth. of New York & New Jersey,*
    290 A.D.2d 22, 736 N.Y.S.2d 324, (1st Dep't 2002) ..................................... 10, 11

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.,*
    460 U.S. 1, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983)..................................... 10, 16

*Prima Paint Corp. v. Flood & Conklin Mfg. Corp.,*
    388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967)................................... 10, 16

*Ratner v. Steinberg,*
    259 A.D.2d 744, 687 N.Y.S.2d 432 (2nd Dep't 1999) ....................................... 11

*Residential Bd. of Mgrs. of the Columbia Condominium v. Alden,*
    178 A.D.2d 121, 576 N.Y.S.2d 859 (1st Dep't 1991) ........................................ 10

*Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.,*
    668 F.3d 60 (2d Cir. 2012)............................................................................ 12, 14

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,*
    559 U.S. 662, 130 S. Ct. 1758, 176 L. Ed. 2d 605 (2010).......................... 12, 15, 18

*Syncora Guarantee Inc. v. Countrywide Home Loans, Inc.,*
    36 Misc. 3d 328, 935 N.Y.S.2d 858 (N.Y. Sup. Ct. 2012) ................................. 20

*TapImmune v. Gardner,*
    2013 N.Y. Misc. LEXIS 5464 (Sup. Ct., N.Y. Co. Apr. 8, 2013) ........................ 6

*Telenor Mobile Commc'ns AS v. Storm LLC,*
    584 F.3d 396 (2d Cir. 2009)................................................................ 15, 16, 17, 18

*United Paperworkers Int'l Union, AFL–CIO v. Misco, Inc.,*
    484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987).................................................. 12

*United States v. Int'l Bhd. of Teamsters,*
    170 F.3d 136 (2d Cir. 1999)....................................................................................... 14

*Victorias Mill. Co. v. Hugo Neu Corp.,*
    196 F. Supp. 64 (S.D.N.Y. 1961) ............................................................................... 7

*Wallace v. Buttar,*
    378 F.3d 182 (2d Cir. 2004).................................................................................. 12, 15

*Westerbeke Corp. v. Daihatsu Motor Co.,*
    304 F.3d 200 (2d Cir. 2002)....................................................................................... 13

## Statutes

28 U.S.C. § 1441(a) ............................................................................................................ 7

9 U.S.C. § 10(a)(4)............................................................................................................ 12

9 U.S.C. § 11(c) ................................................................................................................ 13

9 U.S.C. §10....................................................................................................................... 13

9 U.S.C. §10(a) ......................................................................................................... 1, 7, 12

9 U.S.C. §9................................................................................................................... 1, 6, 7

Petitioner, TapImmune, Inc. ("Petitioner" or "TapImmune") through the undersigned counsel, respectfully submit this memorandum of law in support of Petitioners motion to confirm the arbitration award of the American Arbitration Association ("AAA"), dated July 18, 2014 (the "Award") against Respondent Michael Gardner ("Respondent" or "Gardner"), under the Federal Arbitration Act ("FAA") 9 U.S.C. §9 and in opposition to Respondent's motion to vacate the award ("Motion to Vacate") under the 9 U.S.C. §10(a).

## PRELIMINARY STATEMENT

Respondent's Motion to Vacate reads as a scattershot attempt to overturn the Award that was the product of a fair and final arbitration proceeding.  To that end, the Motion to Vacate pays only passing lip service to the high standards required under the FAA to vacate an arbitration award.  Respondent's arguments fail to connect any applicable law to an analysis of the facts in this case.

Respondent simultaneously argues that this Court is both with and without jurisdiction to entertain the two motions before it.  Respondent argues that this Court lacks jurisdiction to grant Petitioner's motion to confirm while providing no justification for the Court's jurisdiction to grant its Motion to Vacate.  Next, Respondent argues that the arbitrator exceeded her powers by providing a more detailed decision than Respondent alleges was agreed upon by the parties. However, even if true, Respondent fails to explain why the Award would need to be vacated as a result.

Just as untenable, Respondent argues that because the arbitrator decided against Respondent the rulings themselves are evidence of bias.  Again Respondent provides no case law to support the proposition that every losing side in an arbitration is a victim of bias simply because the party feels aggrieved by the result.  Finally, Respondent incorporates whole sections of a

preliminary injunction order into his brief as "controlling law" in support of his manifest disregard of the law argument.   However, the attached order made no findings of law with respect to Petitioner's arbitration claim and only held that Petitioner failed to meet the high standard required for a preliminary injunction, lifted the temporary restraining order, and allowed Mr. Gardner to sell his TapImmune shares.   Ironically, in Mr. Gardner final argument, he claims that TapImmune's only possible form of relief in the arbitration was a return of the shares that he refused to hold for the duration of the arbitration.   As with Respondent's other arguments relevant case law is not provided to support the proposition.

In sum, all of Respondent's arguments are completely without merit.   Accordingly, Petitioner's motion to confirm the arbitration award should be granted and Respondent's Motion to Vacate should be denied.

## FACTUAL BACKGROUND

In the arbitration at issue in this case, Claimant, TapImmune sought $728,000 or alternatively $231,204, plus interest from Respondent.   Affirmation of Adam J. Weinstein to Petition to Confirm ("Petition Weinstein Aff.") at Exhibit ("Ex.") A, Award, pg. 1 [Doc. 6-6].   Mr. Gardner made a counterclaim seeking 90,916 post-split TapImmune shares or alternatively $664,795, plus interest.   *Id.*   A testimonial hearing was held on May 13, 14, 15 and 16 of 2014. *Id.*   Post hearing briefs and reply briefs were also submitted by each party. *Id.*

The only witnesses were Dr. Glenn Wilson, Chairman and Chief Executive Officer of TapImmune, and Mr. Gardner, of Baytree Capital.   *Id.*   The arbitrator found that TapImmune is a clinical-stage immunotherapy company that develops therapies and vaccines for the treatment of various types of cancer and infectious diseases.   *Id.*   Toward that end TapImmune needed money

to stay in business and continue its research to find a cure for cancer. *Id.* TapImmune had been working with the Mayo Clinic and owed it $300,000 in license payments, among other debts. *Id.*

Dr. Wilson met with Mr. Gardner and told him that TapImmune needed to raise $3-5 million dollars in 2012 for Phase I of certain drug clinical trials and $10-15 million dollars for Phase II clinical trials starting in or around 2013. *Id.* The arbitrator found that Mr. Gardner represented to Dr. Wilson he would use his many contacts to assist Dr. Wilson and TapImmune to find investors to provide the money needed by TapImmune and that Dr. Wilson and TapImmune relied on Mr. Gardner's representations. *Id.*

Thereafter, the arbitrator found that TapImmune's Board of Directors approved the hiring of the consultants, including Mr. Gardner. *Id.* at 2. The arbitrator also found corroborating evidence as to the purpose of the consultants hiring in the Board Minutes on May 15, 2012, which reflected that these consultants were hired to raise financing. *Id.* The Board Minutes stated that "The meeting was held to discuss the financing of TapImmune and the need to have a viable strategy that would enable both short term and long term financing." *Id.* At that meeting TapImmune approved the appointment of Michael Gardner as an exclusive financial adviser along with two other advisors. *Id.*

The arbitrator also found that by an agreement dated May 8, 2012, TapImmune formally retained Mr. Gardner to help the company raise money. *Id.* The arbitrator also found that the Consulting Agreement was prepared by Mr. Gardner and describes him as TapImmune's financial adviser for a period of eighteen months. *Id.* As compensation, the arbitrator found that TapImmune issued to Mr. Gardner 5.6 million shares (9.9%) of TapImmune stock on May 15, 2012, in exchange for Mr. Gardner's promise to raise money for TapImmune. *Id.*

The arbitrator found that TapImmune worked with Mr. Gardner for approximately two months during which time Mr. Gardner did not obtain any significant financing for TapImmune. *Id.* Mr. Gardner's services included allowing TapImmune to hold meetings at his office, terminating TapImmune's long time legal counsel, arranging for James Fuller, the head of Baytree's California office, to be placed on TapImmune' board of directors. *Id.* But the arbitrator found that Mr. Gardner understood that he was engaged primarily to seek financing for TapImmune. *Id* at 3. For example, the arbitrator found several emails written by Mr. Gardner to be persuasive of this fact including a July 31, 2012, email stating: "I will continue to seek additional financing using all available sources until told otherwise." *Id.*

The arbitrator found that the issuance of stock to the consultants had become an impediment to the raising of funds. *Id.* In one letter, Dr. Wilson wrote that "[s]ince I signed the Agreement and issued a total of 14 million shares of restricted stock we have not raised any significant money and currently there are no unique leads that would keep the Company afloat…" *Id.* In addition, the arbitrator found that investors did not want to work with TapImmune as long as Mr. Gardner was involved due to reputational issues. *Id.*

At some time thereafter, the parties began legal proceedings. The arbitrator found that TapImmune brought an Order to Show Cause in Supreme Court New York County for a preliminary injunction to restrain Mr. Gardner from selling his TapImmune stock. *Id.* TapImmune posted an undertaking in the amount of $ 100,000. *Id.* The motion was heard by Judge Schweitzer who did not hear any oral testimony by any witness. *Id.* The court denied TapImmune's request for a preliminary injunction and granted Mr. Gardner the surety bond amount of $100,000. *Id.* The restraining order was then vacated on April 8, 2013, and Mr. Gardner sold his TapImmune stock between mid-April and early May 2013 for $231,204. *Id.*

4

The arbitrator based her decision on the testimony and her evaluation of the credibility of the two witnesses finding that Mr. Gardner represented to TapImmune that he would assist in finding investors to raise the money, that TapImmune needed to stay in business, that TapImmune relied upon those representations in signing the Consulting Agreement, and that Mr. Gardner was issued stock based upon those representations. *Id.* at 4.  The arbitrator found that Mr. Gardner's representations to TapImmune were false and that Mr. Gardner took advantage of Dr. Wilson and TapImmune's weakened financial position.  *Id.*  Specifically, the arbitrator found that Mr. Gardner fraudulently induced TapImmune to enter into the agreement with him through: 1) misrepresentations as to what he would or could do for the Company, including raising funds; and 2) omissions about his reputation and ability to obtain or assist in obtaining financing for TapImmune.  *Id.*

To that end the arbitrator found that Mr. Gardner did not provide the services he was hired to perform and did not intend to perform them at the time he entered into the contract with TapImmune.  *Id.*  The arbitrator found that Mr. Gardner knew that TapImmune was acting in reliance upon mistaken information. *Id.*  However, the arbitrator also found that Mr. Gardner did provide some benefits to TapImmune such as making himself generally available to Dr. Wilson, allowed TapImmune to use his office space for meetings, and introduced TapImmune to Wellfleet Partners, Inc. which was to obtain short term bridge financing for TapImmune.  *Id.*

Overall however, the arbitrator found that the benefits of Mr. Gardner's actions were questionable and that Mr. Gardner did not truly perform the services that TapImmune expected.  *Id.*  The arbitrator found that the services that Mr. Gardner did perform were worth $35,000 even though they were not of the nature that caused TapImmune to enter into the agreement. *Id.*  The arbitrator denied Mr. Gardner's counterclaims in all respects.  *Id.*

The arbitrator entered an Award in TapImmune's favor in the sum of $196,204 with post judgment interest to run from the date of the Award at the statutory rate of 9%. *Id.* at 5.

## JURISDICTION

Under 9 U.S.C. §9 a party may enforce an arbitration award either in the court specified in the arbitration agreement or "[i]f no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made." *See also Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co.,* 529 U.S. 193, 200, 120 S. Ct. 1331, 1337, 146 L. Ed. 2d 171 (2000) (holding that the FAA provisions contain a "liberalizing nonrestrictive view" of proper forum for confirming awards).

Here, the arbitration agreement specifically states that a "judgment may be entered thereon in any court having jurisdiction thereof." *See* Petition Weinstein Aff. at Ex. A (the "Consulting Agreement") [Doc. 6-1]. In addition, the site of the arbitration hearing was held before AAA in New York City. Thus, Petitioner's choice of venue in the Southern District Court is appropriate both under the Consulting Agreement and under 9 U.S.C §9 because the motion to confirm is being sought in the jurisdiction where the Award is made.

From the papers it appears that Respondent challenges this court's jurisdiction on several grounds including: 1) that this court is without authority to decide the motion to confirm and must be litigated instead through state court; and 2) that confirming the instant Award would overturn the New York Supreme Court's decision in *TapImmune v. Gardner,* 2013 N.Y. Misc. LEXIS 5464 (Sup. Ct., N.Y. Co. Apr. 8, 2013) (the "Injunction Order"). *See* Motion to Vacate at 1-3. However, as shown below none of Respondent's contentions are accurate in either fact or law.

### I. Petitioner's Choice of Federal Court Is Not In Conflict With Any State Court Action

Respondent argues that "it would be in conflict with the federal removal statute, 28 U.S.C. § 1441(a), to allow TapImmune to begin the litigation in state court and now switch to this Court where it hopes to receive more favorable treatment." *Id.* at 2.  However, Respondent fails to support its contention.   In fact, TapImmune has not sought to confirm its arbitration Award in state court prior to making an application in federal court.

It appears that Respondent labors under the mistaken belief that a denied preliminary injunction, filed and concluded before the arbitration took place, overrides the provisions of 9 U.S.C. §9 and divests this court of its jurisdiction.  *Id.* at 3 ("TapImmune surrendered its right to proceed in this Court when it selected the state court as its forum of choice [for its motion for an injunction].").  The only authority Respondent cites for its incorrect legal proposition is *Irving S. Cohen, Inc. v. Glen Raven Cotton Mills, Inc.,* 263 F. Supp. 107 (S.D.N.Y. 1967).  However, the *Irving,* decision only stands for the proposition that it is the defendant that is entitled to remove a case to federal court and not the plaintiff.  *Id.* (*citing Victorias Mill. Co. v. Hugo Neu Corp.,* 196 F. Supp. 64, 66 (S.D.N.Y. 1961) ("The plain words of the statute show clearly that the right to remove is confined to 'the defendant or the defendants.'")).  Neither the *Irving,* nor *Victorias,* cases can be construed as holding that federal courts are divested of jurisdiction to either confirm or vacate an arbitration award when a state court hears a preliminary injunction initiated by one of the parties and was decided prior to an arbitration proceeding.

Ironically, Respondent seeks to deny Petitioner's motion to confirm on jurisdictional grounds while also arguing that the court has jurisdiction to vacate the Award.  However, Respondent fails to articulate why this court would have jurisdiction to entertain the Motion to Vacate under 9 U.S.C. §10(a) and, at the same time, is without jurisdiction to entertain the motion to confirm under 9 U.S.C. §9, statutes within the same procedural scheme.  *Cortez Byrd Chips,*

*Inc.,* 529 U.S. at 201 (holding that logically §§9-11 would work together concerning proper forum selection).  Such a result would also be contrary to the U.S. Supreme Court's directives for the speedy resolution of arbitration disputes.  *Id.* ("Nothing, indeed, would be more clearly at odds with both the FAA's statutory policy of rapid and unobstructed enforcement of arbitration agreements…or with the desired flexibility of parties…" than restrictive forum rules) (internal citations and quotations omitted).

To force Petitioner to refile the motion to confirm in state court while having a parallel Motion to Vacate in federal court would only cause more confusion than Respondent's imagined interference with Injunction Order could ever create and should be rejected.

## II.   The New York Supreme Court Did Not Rule on The Merits of the Arbitration Claim

Respondent also argues that a state court must supervise an arbitration award where the state court has already passed upon the merits of some dispute relating to the arbitration.  Motion to Vacate at 2 (*citing Ballantine Books Inc. v. Capital Distrib. Co.,* 302 F.2d 17, 19-20 (2d Cir. 1962)).

In *Ballantine Books,* a motion to confirm was brought in the district court by Ballantine against Capital.  *Id.* at 18.  Capital appealed the decision against it claiming, much like Respondent in the present case, that the federal court was without jurisdiction as the New York state courts had previously taken jurisdiction due to a motion to disqualify the arbitration chairman.  *Id.*  Like the present case, Capital also asked the district court to vacate the award on various grounds.  *Id.*  In affirming the district court decision that it had jurisdiction to confirm the award, the Second Circuit held that "even if we were to accept Capital's contention that the beginning of the arbitration began a continuing special proceeding in the New York Supreme Court (or alternatively if we were to believe that the motion there to disqualify the chairman began such a proceeding), we would not

8

hold that Capital had a right to have the district court dismiss or stay the petition to confirm." *Id.* at 20.

In the present case the fact pattern is even further removed than the facts presented in *Ballantine*. Here, the New York Supreme Court was not asked to make a single decision concerning the management of the arbitration proceedings presently at issue. The motions for a temporary restraining order and preliminary injunction was simply to determine whether Mr. Gardner should be enjoined from selling certain shares of TapImmune stock that the company wanted returned after arbitration. Aff. of Daniel S. Steinberg ("Steinberg Aff.") at Ex. 1, Injunction Order at pg. 1. Like in *Ballantine,* it is difficult to discern the rationale behind Respondent's position that the New York State Court began a special proceeding that divests this Court of jurisdiction where the injunction motion had no bearing upon the subsequent arbitration nor this motion to confirm. In sum, Respondent has failed to cite a specific case to support its contention that this Court is without jurisdiction to grant Petitioner's relief.

Moreover, Respondent's Motion to Vacate seeks to deprive the contracting parties of their right to arbitrate their disputes by substituting the arbitration results with the Injunction Order. Indeed, Respondent goes so far as to argue that the state court would have to "overrule itself" to confirm the Award. Motion to Vacate at 5. However, confirming Petitioner's Award will not grant Petitioner a preliminary injunction as previously sought, nor would such a decision disturb the fact that TapImmune failed to meet the high preliminary injunction threshold standard.[1] Moreover, pursuant to the arbitration clause of the contract at issue, Petitioner's claims of breach

---

[1] Under CPLR 7502 the Injunction Order found that in order to issue a preliminary injunction the plaintiff had to show: "(1) irreparable harm; (2) a likelihood of success in arbitration; and (3) a balance of equities in favor of the moving party." Injunction Order at pg. 6 (citations omitted).

of contract and fraudulent inducement could not have been heard by the New York Supreme Court. *ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co.,* 307 F.3d 24, 29 (2d Cir. 2002) ("It is well settled that a claim or defense of fraudulent inducement, when it challenges generally the enforceability of a contract containing an arbitration clause rather than specifically the arbitration clause itself, may be subject to arbitration.") (*citing Prima Paint Corp. v. Flood & Conklin Mfg. Corp.,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 22, 103 S. Ct. 927, 940, 74 L. Ed. 2d 765 (1983) (finding that a court may only make a "restricted inquiry into factual issues" before compelling arbitration).

In addition, had there been no agreement to arbitrate between the parties, the Injunction Order would still not have dismissed Petitioner's claims.  "A preliminary injunction is a provisional remedy.  Its function is not to determine the ultimate rights of the parties, but to maintain the status quo until there can be a full hearing on the merits."  *Morris v. Port Auth. of New York & New Jersey,* 290 A.D.2d 22, 26, 736 N.Y.S.2d 324, 327 (1st Dep't 2002) (*quoting Residential Bd. of Mgrs. of the Columbia Condominium v. Alden,* 178 A.D.2d 121, 122, 576 N.Y.S.2d 859 (1st Dep't 1991); *Koob v. IDS Financial Servs.,* 213 A.D.2d 26, 33, 629 N.Y.S.2d 426 (1st Dep't 1995); *see also, Jamie B. v. Hernandez,* 274 A.D.2d 335, 336, 712 N.Y.S.2d 91 (1st Dep't 2000) ("[t]he function of a preliminary injunction is to provide a provisional remedy by maintaining the status quo pending a full hearing on the merits, rather than to determine the ultimate rights of the parties and mandate corrective action.").

*Guggenheimer v. Ginzburg,* is the seminal New York Court of Appeals case addressing the issue of the effect of preliminary injunction decision upon the underlining causes of action in the complaint.  43 N.Y.2d 268, 372 N.E.2d 17 (1977).  In *Guggenheimer,* the plaintiff moved for an injunction to restrain advertising during the pendency of the underlining action.  *Id.* at 271.  The

10

Special Term found that "not only has plaintiff failed to show that there is a clear right to relief, but has also totally failed to state a cause of action" and under "such circumstances" the court felt "compelled to exercise its *sua sponte* powers to dismiss the complaint…" *Id.* The appellate division affirmed the IAS Court. *Id.*

The court in *Guggenheimer,* reversed the lower courts and reinstated the complaint. According to the New York Appealate Court, the Supreme Court was prohibited from dismissing Claimant's causes of action on a preliminary injunction motion. *Ratner v. Steinberg,* 259 A.D.2d 744, 687 N.Y.S.2d 432, 433 (2nd Dep't 1999) ("[T]he court may not, on its own initiative, convert a motion for a preliminary injunction into one for summary judgment without giving adequate notice to the parties and affording the parties an opportunity to lay bare their proof.") (*citing Guggenheimer, supra; Farrell v. Kiernan,* 213 A.D.2d 373, 623 N.Y.S.2d 314 (2nd Dep't 1995) *EDP Hosp. Computer Sys. v. Bronx–Lebanon Hosp. Ctr.,* 212 A.D.2d 569, 622 N.Y.S.2d 556 (2nd Dep't 1995)); *see also Morris,* 290 A.D.2d at 26.

Respondent's reinterpretation of the Injunction Order as being akin to an order on a  motion to dismiss is inappropriate and would deprive Petitioner of its right to arbitrate the dispute as agreed to by the parties and also, even absent an arbitration agreement, would not have been permitted under New York law.

In sum, this Court has jurisdiction to grant Petitioner's motion to confirm the Award.

## STANDARD OF REVIEW

Under the FAA §10(a), a court may vacate an arbitration panel's decision "only in very unusual circumstances." *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 942, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S,* 333 F.3d 383, 388 (2d Cir. 2003) ("It is well established that courts must grant an arbitration panel's decision

great deference.") Thus, "a petition brought under the FAA is 'not an occasion for *de novo* review of an arbitral award.'" *Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.,* 668 F.3d 60, 71 (2d Cir. 2012) (*quoting Wallace v. Buttar,* 378 F.3d 182, 189 (2d Cir. 2004)).

"The four grounds for vacatur codified in § 10(a) restate the longstanding rule that, "[i]f [an arbitration] award is within the submission, and contains the honest decision of the arbitrators, after a full and fair hearing of the parties, a court...will not set [the award] aside for error, either in law or fact." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,* 559 U.S. 662, 693-94, 130 S. Ct. 1758, 1780, 176 L. Ed. 2d 605 (2010) (*quoting Burchell v. Marsh,* 58 U.S. 344, 349, 17 How. 344, 349, 15 L.Ed. 96 (1855)); *see also United Paperworkers Int'l Union, AFL–CIO v. Misco, Inc.,* 484 U.S. 29, 36–38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987) ("The courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract....Courts...do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts."); *Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp.,* 274 F.2d 805, 808 (2d Cir. 1960) ("[T]he court's function in confirming or vacating an arbitration award is severely limited. If it were otherwise, the ostensible purpose for resort to arbitration, *i.e.,* avoidance of litigation, would be frustrated.").

Respondent has failed to meet the high standard set forth under 9 U.S.C. § 10(a) and relevant case law.

## I.     The Arbitrator Did Not Exceed Her Powers

The FAA allows parties to petition the district court for an order vacating an arbitration award "where the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4). The Second Circuit has "'consistently accorded the narrowest of readings' to the FAA's authorization to vacate awards

pursuant to § 10(a)(4)." *Banco de Seguros del Estado v. Mut. Marine Office, Inc.,* 344 F.3d 255, 262 (2d Cir. 2003) (*quoting Westerbeke Corp. v. Daihatsu Motor Co.,* 304 F.3d 200, 220 (2d Cir. 2002)). To that end, the "inquiry under § 10(a)(4) thus focuses on whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue." *Westerbeke Corp.,* 304 F.3d at 220. (citations and quotations omitted).

Here, regardless of whether or not the parties agreed to a standard award or a reasoned award no ground exists for vacating the Award on this basis because the issue was properly submitted to the arbitrator. Respondent's citation to an initial preliminary hearing order does nothing to alter the fact that the issue was properly before the arbitrator and not the courts. Steinberg Aff., Ex. 8. Moreover, Respondent fails to show how vacating the Award would be an appropriate remedy under the circumstances because a reasoned award in no way goes to results obtained in the arbitration itself.

Under 9 U.S.C. § 11(c) "[w]here the award is imperfect in matter of form not affecting the merits of the controversy" a court may issue an order modifying the award upon application. Clearly, Respondent's contention that the Award is reasoned rather than issued without reasoning on a standard form does not affect the merits of the case. However, Respondent has failed to seek relief under 9 U.S.C. § 11(c). Under the circumstances no grounds exist to set aside the Award on the grounds claimed by Respondent.

### II. No Evidence Has Been Presented of the Arbitrator's Partiality

In the Second Circuit, "evident partiality within the meaning of 9 U.S.C. §10 will be found where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration." *Morelite Const. Corp. (Div. of Morelite Elec. Serv.) v. New York City Dist. Council*

*Carpenters Ben. Funds,* 748 F.2d 79, 84 (2d Cir. 1984) (internal quotation marks omitted). "Unlike a judge, who can be disqualified in any proceeding in which his impartiality might reasonably be questioned…an arbitrator is disqualified only when a reasonable person, considering all the circumstances, would *have* to conclude that an arbitrator was partial to one side." *Scandinavian Reinsurance Co.,* 668 F.3d at 72 (citations and internal quotations omitted; emphasis in original). Further, a claim of evident partiality "may not be based simply on speculation." *United States v. Int'l Bhd. of Teamsters,* 170 F.3d 136, 147 (2d Cir. 1999) (citations omitted). "The burden of proving evident partiality 'rests upon the party asserting bias.' *Scandinavian Reinsurance Co.,* 668 F.3d at 72 (*quoting Andros Compania Maritima, S.A. v. Marc Rich & Co., A.G.,* 579 F.2d 691, 700 (2d Cir.1978) (internal quotation mark omitted)).

In the vast majority of cases involving claims of partiality, the claim involves an analysis of the impact of an undisclosed relationship between the arbitrator and another relevant party. *See e.g., Scandinavian Reinsurance Co.,* 668 F.3d at 72 ("Among the circumstances under which the evident-partiality standard is likely to be met are those in which an arbitrator fails to disclose a relationship or interest that is strongly suggestive of bias in favor of one of the parties.") (*citing Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi, A.S.,* 492 F.3d 132, 136 (2d Cir. 2007)); *Lucent Technologies Inc. v. Tatung Co.,* 379 F.3d 24, 28 (2d Cir. 2004) ("'The judiciary should minimize its role in arbitration as judge of the arbitrator's impartiality,'" and favor a policy of early disclosure of relationships) (*citing Commonwealth Coatings Corp. v. Cont'l Cas.* Co., 393 U.S. 145, 151, 89 S. Ct. 337, 340, 21 L. Ed. 2d 301 (1968) (White, J., concurring)); *Morelite Const.,* 748 F.2d at 84 (finding impartiality where there was "a father-son relationship between an arbitrator and the President of an international labor union, a district union of which is a party to the arbitration").

Here, Respondent claims that "[i]n this case, the bias against Gardner is apparent from the face of the arbitration award." Motion to Vacate at 8.  Respondent goes on to cite various selected portions of the Award in order to support his tenuous position that the arbitrator's determination against Respondent is evidence of partiality. Respondent has failed to cite a single case showing that an arbitrator can be biased by deciding factual and legal issues against the complaining party. If such a bias were recognized by the courts then neither side could ever win or lose an issue as all decisions would be evidence of bias.

In sum, Respondent has failed to show that arbitrator's decision was influenced by any partiality.  The Award was in accordance with the evidence presented at hearing and Respondent's arguments to the contrary have no merit.

### III.   Respondent's Claim of "Manifest Disregard of Law" Must Be Denied

The manifest disregard concept is not precisely defined but "clearly means more than error or misunderstanding with respect to the law." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker,* 808 F.2d 930, 933 (2d Cir. 1986).  "A mere demonstration that an arbitration panel made 'the wrong call on the law' does not show manifest disregard; 'the award should be enforced...if there is a *barely colorable justification* for the outcome reached.'" *Telenor Mobile Commc'ns AS v. Storm LLC,* 584 F.3d 396, 407 (2d Cir. 2009) (*quoting Wallace,* 378 F.3d at 190) (emphasis in original) (internal quotation marks omitted). Cases making a finding manifest disregard "tend to be extreme, such as 'explicitly reject[ing] controlling precedent' or otherwise reaching a decision that 'strains credulity' or lacks even a 'barely colorable' justification. *Id.* (*quoting Stolt–Nielsen SA.,* 548 F.3d at 92–93 (internal quotation marks omitted).

The manifest disregard analysis has three prongs: 1) whether the law that was allegedly ignored was clear, and in fact explicitly applicable to the matter before the arbitrators; 2) whether

the law was in fact improperly applied, leading to an erroneous outcome; and 3) the subjective

knowledge actually possessed by the arbitrators in order to find that the arbitrator knew of the law

and its applicability to the problem before him.  *Id.* at 408 (*citing Stolt–Nielsen SA,* 548 F.3d at 93

(*quoting Duferco Int'l Steel Trading,* 333 F.3d at 389–90)).

Respondent makes essentially two claims under manifest disregard of the law.  First, that

"TapImmune's claims respecting fraud in the inducement and fraudulent concealment were invalid

as a matter of law."  Motion to Vacate at 10.  Second, the monetary award made to TapImmune

"disregards the applicable rules" providing a "cash windfall" where TapImmune "sustained no

actual damages."  *Id.* at 13.  Neither of these contentions has merit.

**A.  TapImmune Proved Fraud in the Inducement at the Arbitration Hearing**

Respondent fails to make a showing concerning the three elements necessary to prove

manifest disregard of law.  The first element requires the law that was allegedly ignored to be clear,

and in fact explicitly applicable to the matter before the arbitrators.  *Telenor Mobile Commc'ns AS*

*v. Storm LLC,* 584 F.3d at 408.

Here, Respondent argues, as discussed *supra,* that Peitioner's arbitration claims were

dismissed as a matter of law due to the Injunction Order's holding.  Motion to Vacate at 10 ("The

[New York State] court explained in clear terms that TapImmune's claims respecting fraud in the

inducement and fraudulent concealment were invalid as a matter of law").  As shown above the

issue of fraudulent inducement was properly before the arbitrator, not the New York State Supreme

Court. *ACE Capital Re Overseas Ltd.,* 307 F.3d at 29 (*citing Prima Paint Corp.,* 388 U.S. 395;

*Moses H. Cone Mem'l Hosp.,* 460 U.S. 1, at 22).  Indeed, regardless of the presence of an arbitration

agreement the Injunction Order still cannot constitute a motion to dismiss finding under New York

law.  *See Guggenheimer,* 43 N.Y.2d 268.

16

Dispite being given many opportunities to support the proposition that the Injunction Order dismissed TapImmune's arbitration claims, Respondent has refused to cite any authorities to this effect.  Meanwhile, the arbitrator considered and accepted Petitioner's authorities showing that a state court cannot decide the underlining merits of a dispute on a motion for preliminary injunction. *Compare* Weinstein Aff., Ex. A, Claimant's Pre-Hearing Brief, pgs. 17-19; Ex. B, Claimant's Opposition to Respondent's Motion to Dismiss *with* Steinberg Aff., Ex. 9, Respondent's Motion to Dismiss and Pre-Hearing Brief, pgs. 5-7; Ex. 11, Respondent's Post-Hearing Brief, pgs. 34-37; Ex. 12, Respondent's Reply Post-Hearing Brief, pgs. 10-14.  An examination of these documents shows that at no time has Respondent provided either the arbitrator or this Court with relevant case law that was capable of being subject to being disregarded.

The second prong of manifest disregard is that the law was improperly applied.  *Telenor Mobile Commc'ns AS v. Storm LLC,* 584 F.3d at 408.  But since there is no case law to support Respondent's position that an Injunction Order can dismiss claims the parties agree to submit to arbitration, Respondent has also failed meet the second prong.  Finally, since Respondent has not located countravailing authority on this issue it would be impossible for Respondent to meet the third prong and find that the arbitrator knew of the law and its applicability to the problem before him.  *Id.*

Turning to Petitioner's claims underlying fraudulent inducement claims the arbitrator had more than sufficient facts to support her holding.  At the outside, "a challenge to the arbitrator's evaluation of the evidence…is not a proper ground for vacatur."  *Giller v. Oracle USA, Inc.,* 512 F. App'x 71, 74 (2d Cir. 2013) *cert. denied,* 134 S. Ct. 531, 187 L. Ed. 2d 394 (2013).  Thus, the proper inquiry is strictly confined to whether or a "barely colorable" justification exists that could

possibly make a finding of fraudulent inducement.   *Telenor Mobile Commc'ns AS,* 584 F.3d at 407 (*quoting Stolt–Nielsen SA,* 548 F.3d at 92–93).

Under New York law, a fraud in the inducement claim requires a showing that: "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance."   *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19 (2d Cir. 1996) (citations omitted).   A plaintiff may pursue a claim for fraudulent inducement where it has entered into an agreement upon the theory that either the defendant: (1) misrepresented a present fact; or (2) made a false promise to do something that was not explicitly required by the contract.   *Frontier-Kemper Constructors, Inc. v. Am. Rock Salt Co.*, 224 F. Supp. 2d 520, 529 (W.D.N.Y. 2002); *see International Cabletel Inc. v. Le Groupe Videotron Ltee*, 978 F.Supp. 483, 491 (S.D.N.Y.1997) (holding that "fraud in the inducement can be supported by a false statement of present fact, *or* by a false statement of future intent which concerns a matter collateral to a contract between the parties") (emphasis added).

As outlined in Weinstein Aff. Ex. C, Claimant's Post-Hearing Brief, pgs. 12-19, and Weinstein Aff. Ex. D, Claimant's Post-Hearing Reply Brief, pgs. 11-14, among other places, Petitioner cited to numerous relevant authorities and provided both documentary and testimonial evidence produced at hearing in support of its claim.   Petitioner claimed that Mr. Gardner falsely promised to raise funds for TapImmune while having a preconceived and undisclosed intention of not performing.   Weinstein Aff. Ex. C, pg. 15.   Respondent denied that raising funds was the basis for the consulting agreement.   *Id.*   Despite these denials, Petitioner provided documentary and testimonial evidence of the promise to raise funds including an email from Mr. Gardner on May 28, 2012, just two weeks after the Consulting Agreement was signed, where Mr. Gardner explained

that, "At a board meeting of [TapImmune] it was unanimously agreed that several consultants including Baytree be *hired to explore financing*." *Id.* at pg. 16. (emphasis added). Many more documents and testimony was cited to in the Post-Hearing Brief to support Petitioner's claims that Mr. Gardner fraudulently induced TapImmune to part with almost 10% of its outstanding stock on false promises of fundraising.

The arbitrator found that Mr. Gardner fraudulently induced TapImmune to enter into the agreement with him through misrepresentations as to raising funds for the company. Petition Weinstein Aff. at Ex. D, pg. 4 [Doc. 6-6]. In addition, the arbitrator found that Mr. Gardner did not provide the services he was hired to perform and did not intend to perform them at the time he entered into the contract with TapImmune. Id.

As shown, both legal authorities and the facts presented at hearing supported the Petitioner's claims sufficient for a colorable ruling to be made in Petitioner's favor. Respondent's attempt to re-litigate the arbitration through it Motion to Vacate must be rejected. Respondent has simply failed to show how the arbitrator made any ruling in manifest disregard for the law.

**B.  The Arbitrator Had Grounds to Order Monetary Relief**

Respondent also claims that the arbitrator's decision to award monetary damages "disregards the applicable rules" by providing a "cash windfall" where TapImmune "sustained no actual damages." *Id.* at 13.

Petitioner alleged that TapImmune was damaged by its reliance on Mr. Gardner's fraudulent misrepresentations and omissions. Weinstein Aff. Ex. C, pgs. 25-27. In a fraud action, "[d]amages are to be calculated to compensate plaintiffs for what they lost because of the fraud…" *Lama Holding Co. v. Smith Barney Inc.,* 88 N.Y.2d 413, 421 668 N.E.2d 1370 (1996) (internal citations omitted). The law is clear that a party induced to enter a contract by fraud or

19

misrepresentations may seek to recover his damages or he may elect to rescind the transaction and seek to be placed in status quo. *Ballow Brasted O'Brien & Rusin P.C. v. Logan,* 435 F.3d 235, 238 (2d Cir. 2006).

By virtue of Mr. Gardner's fraudulent inducement, TapImmune was deprived of 5.6 million shares of its stock. Since Mr. Gardner sold his shares rescission and a return of the shares was impossible. In this case recessionary damages were appropriate under New York law because "[r]escissory damages are designed to be the economic equivalent of rescission in a circumstance in which rescission is warranted, but not practicable." *Syncora Guarantee Inc. v. Countrywide Home Loans, Inc.,* 36 Misc. 3d 328, 343, 935 N.Y.S.2d 858, 869-70 (N.Y. Sup. Ct. 2012).

Thus, the arbitrator awarded the proceeds of Mr. Gardner's sales minus an estimated $35,000 worth of services that Mr. Gardner actually performed for the company. Petition Weinstein Aff. Ex. D, pg. 4.

Respondent argues that the only relief Petitioner could seek is "to the return of the shares in order to reverse the issuance to Gardner." Motion to Vacate at 13. However, as shown above New York law allows for recessionary damages. Respondent has not provided any authority to the contrary. Thus, it is unclear what law the arbitrator: 1) allegedly ignored that was clear; 2) in fact improperly applied; and 3) had subjective knowledge of the law and its applicability to the problem before her.

As shown above, Petitioner provided the arbitrator with sufficient legal authorities to make an award of monetary damages and Respondent has failed to satisfy the three prongs of the manifest disregard test.

**CONCLUSION**

Petitioner respectfully requests an order confirming the arbitration award into a judgment in the amount of $196,204.00 plus statutory interest at 9% per annum from July 18, 2014, until the Award is paid and a denial of Respondent's Motion to Vacate together with any other just and equitable relief.

Dated: October 10, 2014
New York, NY

                                       Respectfully Submitted,
                                       GANA LLP

By:                                
                                       Adam J. Weinstein, Esq.
                                       Adam J. Gana, Esq.
                                       345 Seventh Avenue, 21st Floor
                                       New York, NY 10001
                                       Phone: (212) 776-4252
                                       Email: aweinstein@ganallp.com

                                       *Attorneys for Petitioner*