USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/8/2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
           :
TAPIMMUNE, INC.,           :
           :
          Petitioner, :
           :    1:14-cv-6087-GHW
     -against-      :
           :    MEMORANDUM OPINION
MICHAEL GARDNER,         :    AND ORDER
          Respondent. :
           :
-------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

## I. INTRODUCTION

Before the Court are TapImmune, Inc.'s petition to confirm an arbitration award and respondent Michael Gardner's motion to vacate the award. Mr. Gardner asserts a number of grounds for *vacatur*, but for the reasons outlined below, the Court rejects them all. Thus, TapImmune's petition to confirm the arbitration award is GRANTED, and Mr. Gardner's motion to vacate the award is DENIED.

## II. BACKGROUND

TapImmune is a biotechnology company and a citizen of Washington state. It specializes in the development of vaccines for cancers and other serious diseases. In 2012, TapImmune needed to raise money for upcoming clinical trials, as well as to satisfy outstanding debts. Dr. Wilson, the chairman and CEO of TapImmune, hired the respondent, Michael Gardner, a citizen of New York, to assist TapImmune in finding investors to raise money.

On May 15, 2012, Dr. Wilson and Mr. Gardner entered into an agreement for Mr. Gardner to servie as TapImmune's "exclusive financial advisor" for 18 months, "to perform business and financial consulting services" for them. Consulting Agreement, Dkt. No. 6, Ex A, at 1. In the

agreement, Mr. Gardner agreed to provide advice and guidance to TapImmune in a number of specific areas, including long-term financial planning. *Id.* at 1-2. Mr. Gardner also agreed to consult with TapImmune regarding investor and public relations and SEC filings. *Id.* at 2. In exchange, TapImmune paid Mr. Gardner in stock, specifically 9.9% of its "fully diluted capitalization in newly issued common stock" at the time the agreement was signed. *Id.* at 2.

The agreement also contained an arbitration provision, which reads:

> Any controversy, dispute or claim arising out of or relating to this agreement, or its interpretation, application, implementation, breach or enforcement which the parties are unable to resolve by mutual agreement, shall be settled by submission by either party of the controversy, claim or dispute to binding arbitration in New York, N.Y. (unless the parties agree in writing to a different location) before a single arbitrator in accordance with the rules of the American Arbitration Association then in effect. In any such arbitration proceeding the parties agree to provide all discovery deemed necessary by the arbitrator. The decision and award made by the arbitrator shall be final, binding and conclusive on all parties hereto for all purposes, and judgment may be entered thereon in any court having jurisdiction thereof.

*Id.* at 3.

Not long after the agreement was signed, Dr. Wilson wrote to Mr. Gardner expressing concerns about his performance under the contract and ability to raise money. It appears the relationship between Mr. Gardner and TapImmune soon soured, because on January 22, 2013, TapImmune filed a claim against Mr. Gardner with the AAA International Centre for Dispute Resolution, claiming that Mr. Gardner had fraudulently induced TapImmune to enter into the consulting agreement by making false representations. Pet. at ¶ 5.

On December 21, 2012, before commencing arbitration, TapImmune sought a preliminary injunction in aid of arbitration by order to show cause in New York Supreme Court. TapImmune asked the court to enjoin Mr. Gardner from transferring or selling his TapImmune stock. It argued that otherwise it would be impossible for them to recover that stock if they prevailed in their

planned arbitration. *See* State Court Decision, Dkt. No. 11, Ex 1, at 5. The court granted a temporary restraining order. *See* Dkt. No. 11, Ex 4.

On April 8, 2013, the New York Supreme Court denied TapImmune's motion for a preliminary injunction and vacated the temporary restraining order, allowing Mr. Gardner's sale of TapImmune stock to go forward. The court reasoned that N.Y.C.P.L.R. 7502(c), the New York state law governing preliminary injunctions in aid of arbitration, required assessing the traditional equitable criteria—(1) irreparable harm; (2) likelihood of success; and (3) whether the balance of equities favors the moving party—as well as whether "the award to which the applicant may be entitled may be rendered ineffectual without such provisional relief." *See* State Court Decision, at 3-6 (quoting N.Y.C.P.L.R. 7502(c)). After assessing both the traditional equitable and arbitration-specific criteria, the court found that TapImmune had not demonstrated a likelihood of success on the merits of its claims, and thus denied the motion for a preliminary injunction. *Id.* at 6-11.

Mr. Gardner responded to the arbitration claim later that day, and filed counterclaims with the arbitrator alleging breach of contract. Pet. at ¶ 6. The parties exchanged discovery, filed briefs, and in May 2014, had a 3-day hearing in front of a single arbitrator in New York. *Id.* at ¶ 7. After the hearing, both sides filed post-hearing briefs. *Id.* at ¶ 8. On July 18, 2014, the arbitrator issued a decision in favor of TapImmune for $196,204 plus statutory interest. *Id.* at ¶ 9.

TapImmune filed a petition to confirm the arbitration award in this Court, and Mr. Gardner responded by filing papers styled as both an opposition to the petition to confirm and a motion to vacate the award. Mr. Gardner argues that: (1) TapImmune's previous motion for a preliminary injunction in state court requires this Court to decline jurisdiction; (2) if this Court confirmed the arbitration award it would be reversing the state court's preliminary injunction decision; (3) the arbitrator's reasoned award went beyond the parties' agreement for a standard award; (4) the

arbitrator showed evident partiality; and (5) the award itself was rendered in manifest disregard of the law.

In its reply, TapImmune argues that filing this petition to confirm in federal court does not conflict with state court actions or prior rulings, and that Mr. Gardner has not provided any evidence that the arbitrator exceeded her powers, showed evident partiality, or acted in manifest disregard of the law.

### III.   LEGAL STANDARDS

"It is well-settled that judicial review of an arbitration award is narrowly limited." *Barbier v. Shearson Lehman Hutton Inc.*, 948 F.2d 117, 120 (2d Cir. 1991). "Normally, confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court . . . ." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (internal quotation marks omitted).

A reviewing court is required to grant a petition to confirm an arbitration award "unless the award is vacated modified, or corrected as prescribed in [9 U.S.C. §§ 10 and 11]." 9 U.S.C. § 9. Under 9 U.S.C. § 10, an award may only be vacated in one of four circumstances:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). In addition, there is a fifth, "judicially-created ground, namely that an arbitral decision may be vacated when an arbitrator has exhibited a manifest disregard of law." *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 121 (2d Cir. 2011) (internal quotation marks omitted).

## IV.  DISCUSSION

### a.  This Court's Jurisdiction

Under 9 U.S.C. § 9, a petition to confirm an arbitration award may be brought in "the United States court in and for the district within which such award was made," unless another court was specified in the parties' agreement. Here, the arbitration proceedings took place in New York, and the award was made here. *See* Pet. at ¶¶ 4, 7. In addition, the parties specified in their agreement that any arbitration would take place in New York City, and that "judgment may be entered thereon in any court having jurisdiction thereof." Ex A, Dkt. No. 6, at 3.

Mr. Gardner argues that this petition should have been brought in state court, and thus urges the Court not to retain jurisdiction. He cites *Ballantine Books Inc. v. Capital Distribution Co.* for the proposition that "there may be 'situations where a state court has proceeded so far in the supervision of an arbitration that it would be an abuse of discretion for the federal court to intrude itself.'" Opp. at 2 (quoting 302 F.2d 17, 19-20 (2d Cir. 1962)). He claims that the key to assessing whether such a situation has arisen "is whether the state court 'has actually passed upon the merits of some dispute relating to the arbitration.'" Opp. at 2 (quoting *Ballantine Books*, 302 F.2d at 20). Thus, his argument goes, because the state court considered the likelihood of TapImmune's success on the merits in deciding whether to issue a preliminary injunction, this Court should not "intrude itself" on the state court by hearing this petition. But Mr. Gardner uses selective quotations to read too much into the Circuit's decision in *Ballantine Books*.

In *Ballantine Books*, like here, the petitioner filed a petition to confirm an arbitration award in the federal district court. 302 F.2d at 18. During the arbitration proceedings—and thus prior to the

petition to confirm—the respondent in *Ballantine Books* had filed motions in New York Supreme Court to stay the arbitration and to disqualify the chairman of the arbitration panel. *Id.* The state court judge denied both motions, and the Appellate Division, First Department affirmed the latter decision on appeal, finding that the motion was premature. *Id.* at 18-19. The federal district court confirmed the arbitration award and the respondent appealed to the Second Circuit.

The respondent in *Ballantine Books* made an argument much like the one Mr. Gardner makes here—that the state court had "taken jurisdiction over the entire arbitration proceeding upon the filing of [respondent]'s motion to disqualify the chairman" and "that this jurisdiction precluded the federal court from entertaining any motion pertaining to the arbitration." *Id.* at 19. Mr. Gardner argues that *Ballantine Books* establishes the principle that once a state court has ruled on a motion related to the underlying merits of an arbitration, a federal court is precluded from hearing the case.

The text of the decision, however, belies Mr. Gardner's argument, and makes clear that the Circuit did not reach that issue. The Circuit stated:

> [E]ven if we were to accept Capital's contention that the beginning of the arbitration began a continuing special proceeding in the New York Supreme Court (or alternatively if we were to believe that the motion there to disqualify the chairman began such a proceeding), we would not hold that Capital had a *right* to have the district court dismiss or stay the petition to confirm. . . . Whether or not there might be situations where a state court has proceeded so far in the supervision of an arbitration that it would be an abuse of discretion for the federal court to intrude itself, such a situation is not here presented. Such discretion must be exercised and judged in terms of the practicalities of the situation.

*Id.* at 20 (emphasis added). In affirming the federal district court's discretion over whether to defer to a pending state court proceeding,[1] the Circuit did not say that there definitely are, or—as Mr.

---

[1] Indeed, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule. 'The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest.'"

Gardner contends—even that there definitely *might be*, situations where a state court has proceeded so far in the supervision of an arbitration that a federal court should decline jurisdiction. It simply said that whether or not such a situation might possibly arise, it had not arisen there.

The court continued, saying:

> [W]e hold that at the time of Ballantine's petition to confirm[,] the state court did not have the arbitration proceedings *sub judice* and thus there was in actuality no conflict of jurisdiction. Whether or not such jurisdiction had attached is for this purpose a question of federal law. A party's unsuccessful attempt to have a state court entertain a motion to intervene in arbitration proceedings does not give the state court jurisdiction of the entire proceeding. No court has the proceedings *sub judice* at least until such time as it has actually passed upon the merits of some dispute relating to the arbitration.

*Ballantine Books*, 302 F.2d at 20. Respondent argues that "[w]hile in *Ballantine Books*, a pre-hearing motion to disqualify an arbitrator was insufficient to render the arbitration proceedings *sub judice* before the state court, in the instant case, TapImmune's motion for an injunction placed the merits of its case before the Supreme Court and compelled that court to rule on the merits of TapImmune's claims." Opp. at 2.

However, in determining whether the state court has the arbitration proceedings *sub judice*,[2] this case differs little, if at all, from *Ballantine Books*. There, the state court, having previously ruled on the respondent's motions, did not have the case *sub judice* when the petitioner filed its petition in federal court. *Ballantine Books*, 302 F.2d at 20. Similarly, here, the state court denied TapImmune's motion for a preliminary injunction and disposed of the case on April 8, 2013. *See* State Court Decision, at 1. Thus, it does not have this matter *sub judice*, and "thus there [i]s in actuality no conflict of jurisdiction." *See Ballantine Books*, 302 F.2d at 20; *see also Local 501, Int'l Ladies' Garment*

---

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976) (quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188-189 (1959)).
[2] *Sub judice* is defined as "[b]efore the court or judge for determination; at bar." *Black's Law Dictionary* 1652 (10th ed. 2014).

*Workers Union v. Barmon Bros. Co.*, 418 F. Supp. 267, 269 (S.D.N.Y. 1976) ("[T]he state courts do not have the arbitration proceedings *sub judice*, and as in *Ballantine* the petition to confirm the arbitration award is an independent action.  There is consequently no jurisdictional bar to the acceptance of this petition.").

Mr. Gardner cites no case law to support his argument that a previous motion filed in, decided by, and disposed of by a state court deprives this Court of jurisdiction to hear this case.  Nor does he cite any case law to support his argument that this Court should exercise discretion and defer to a state court in which no action is currently pending.  His suggestion that the federal removal statute is applicable here is baseless, and his appeal to principles of comity is unavailing.  The Court rejects Mr. Gardner's argument that it must decline jurisdiction over this petition.

### b.  Effect of the State Court's Preliminary Injunction Decision

Mr. Gardner next argues that granting the petition to confirm the arbitration award would "reverse" the state court's decision not to grant TapImmune a preliminary injunction in aid of arbitration.  TapImmune frames the issue differently, arguing that Mr. Gardner "seeks to deprive the contracting parties of their right to arbitrate their disputes by substituting the arbitration results with the Injunction Order."  Reply at 9.  The Court agrees with TapImmune that Mr. Gardner is seeking to displace the findings of the arbitrator with the state court's decision on the preliminary injunction.

Mr. Gardner fails to acknowledge the provisional nature and purpose of a preliminary injunction, and the correspondingly limited nature of a court's inquiry at that stage.  "[A] preliminary injunction—as indicated by the numerous more or less synonymous adjectives used to label it—is, by its very nature, interlocutory, tentative, provisional, ad interim, impermanent, mutable, not fixed or final or conclusive, characterized by its for-the-time-beingness."  *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 742 (2d Cir. 1953) (Frank, J.); *see also Margolies v. Encounter, Inc.*, 42 N.Y.2d 475, 479 (1977) ("A preliminary injunction is an extraordinary *provisional* remedy to which a plaintiff

is entitled only on a special showing. It operates as a substantial limitation on the defendant's interests *prior to* any adjudication of the respective rights of the parties on the merits . . . .") (emphasis added).

A preliminary injunction "provide[s] a provisional remedy by maintaining the status quo pending a full hearing on the merits . . . ." *Jamie B. v. Hernandez*, 274 A.D.2d 335, 336, 712 N.Y.S.2d 91, 92 (App. Div. 1st Dep't 2000). In deciding whether to grant a preliminary injunction, a court does not "determine the ultimate rights of the parties and mandate corrective action." *Id.*; *see also Morris v. Port Auth. of New York & New Jersey*, 290 A.D.2d 22, 26 (App. Div. 1st Dep't 2002) (A preliminary injunction's "function is not to determine the ultimate rights of the parties, but to maintain the status quo until there can be a full hearing on the merits.").

As the state court acknowledged here, the merits inquiry at the preliminary injunction stage is limited to assessing a party's *likelihood* of success: "The court finds that CPLR 7502(c) requires an applicant to demonstrate . . . a likelihood of success in arbitration . . . ." State Court Decision, at 8. The Court recognizes that, as Mr. Gardner points out, the state court here said that "each claim of fraud fails as a matter of law." Opp. at 4 (quoting State Court Decision, at 7). But that language alone does not change the limited scope of the state court's inquiry, and ultimate decision, in a preliminary injunction proceeding. A court's decision that a party has not demonstrated a likelihood of success on the merits is not itself a decision on the merits. Thus, granting the petition to confirm would have no impact—and certainly would not "overturn"—the state court's decision denying the preliminary injunction.

The Court rejects Mr. Gardner's argument that by confirming the arbitration award it will reverse a decision of the state court.

9

### c. Reasoned Rather Than Standard Award

Mr. Gardner argues that by issuing a "reasoned" rather than a "standard" award, the arbitrator exceeded her powers, and asks this Court to vacate the award pursuant to 9 U.S.C. § 10(a)(4). "[A] 'reasoned' award is an award that is provided with or marked by the detailed listing or mention of expressions or statements offered as a justification for the decision of the arbitrator." *Tully Const. Co./A.J. Pegno Const. Co., J.V. v. Canam Steel Corp.*, No. 13-cv-3037 (PGG), 2015 WL 906128, at *15 (S.D.N.Y. Mar. 2, 2015) (quoting *Cat Charter, LLC v. Schurtenberger*, 646 F.3d 836, 844 (11th Cir. 2011) (internal alterations omitted) (emphasis deleted). A standard award is a "mere announcement of [the arbitrator's] decision." *Am. Centennial Ins. Co. v. Global Int'l Reinsurance Co.*, No. 12-cv-1400 (PKC), 2012 WL 2821936, at *9 (S.D.N.Y. July 9, 2012) (quoting *Rain CII Carbon, LLC v. ConocoPhillips Co.*, 674 F.3d 469, 474 (5th Cir. 2012)). Therefore, Mr. Gardner is challenging the arbitrator's decision because it provided too much of an explanation of the basis for her conclusions.

The Second Circuit has "consistently accorded the narrowest of readings" to section 10(a)(4). *Banco de Seguros del Estado v. Mut. Marine Office, Inc.*, 344 F.3d 255, 262 (2d Cir. 2003) (quoting *Westerbeke Corp. v. Daihatsu Motor Co., Ltd.*, 304 F.3d 200, 220 (2d Cir. 2002)). Given this narrow reading,

> Our inquiry focuses on whether the arbitrator[ ] had the power based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrator[ ] correctly decided that issue. We must determine whether the arbitrator acted within the scope of [her] authority, or whether the arbitral award is merely the arbitrator['s] own brand of justice.

*Id.* (internal citations and alterations omitted).

Courts have found that an arbitrator *may* exceed her authority "by failing to provide an award in the form required by an arbitration agreement." *See Am. Centennial Ins. Co.*, 2012 WL 2821936, at *8 (collecting cases); *see also Tully Const. Co./A.J. Pegno Const. Co., J.V.*, 2015 WL 906128,

at *17 (collecting cases from other Circuit Courts of Appeals).  In addition, a few courts in this District "have assumed without deciding . . . that Section 10(a)(4) provides a proper basis for *vacatur* where the form of an arbitrator's award differs from that called for in the parties' agreement."  *See Tully Const. Co./A.J. Pegno Const. Co., J.V.*, 2015 WL 906128, at *17 (collecting cases).  But these cases all deal with situations where an arbitrator was required to issue a "reasoned" award or "findings of fact and conclusions of law" along with her award, yet failed to provide the required reasoning and detail.  Mr. Gardner cites to no cases where a court has reached such a conclusion on the basis of an arbitrator providing *more* information about her reasoning rather than less.

In addition, Mr. Gardner does not claim that the *arbitration agreement* here required a standard award; rather, he cites to a *scheduling order* issued by the arbitrator after an "initial preliminary hearing" with the parties at the start of the arbitration process.  *See* Opp. at 6-7.

Given the narrow scope of judicial review of arbitration awards and the narrow scope of section 10(a)(4), the Court is unpersuaded by Mr. Gardner's arguments and will not vacate the award on the basis of the arbitrator allegedly exceeding her powers by issuing a reasoned, rather than a standard, decision.

      **d.  Evident Partiality**

Mr. Gardner next alleges that the arbitrator showed "evident partiality," and thus asks this Court to vacate the award pursuant to 9 U.S.C. § 10(a)(2).

Courts in the Second Circuit find evident partiality where "a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration."  *Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 72 (2d Cir. 2012) (quoting *Morelite Const. Corp. v. New York City Dist. Council Carpenters Ben. Funds*, 748 F.2d 79, 84 (2d Cir. 1984)).  "Unlike a judge, who can be disqualified in any proceeding in which his impartiality might reasonably be questioned, an arbitrator is disqualified only when a reasonable person, considering all the circumstances, would

11

*have* to conclude that an arbitrator was partial to one side." *Id.* (quoting *Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi, A.S.*, 492 F.3d 132, 137 (2d Cir. 2007)) (emphasis in *Applied Industrial*) (internal quotation marks omitted).

Although "proof of actual bias is not required" and "partiality can be inferred from objective facts inconsistent with impartiality," "a party seeking *vacatur* must prove evident partiality by showing something more than the mere appearance of bias." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013) (internal citations, alterations, and quotation marks omitted). "A showing of evident partiality must be direct and not speculative," and the party seeking *vacatur* "bear[s] a high burden of demonstrating objective facts inconsistent with impartiality." *Id.* at 105 (internal citations and quotation marks omitted).

Mr. Gardner asserts that the arbitrator's evident partiality is "apparent from the face of the arbitration award." Opp. at 8. To support that conclusory statement, he points out that the arbitrator discussed his reputation and criminal history in finding that he fraudulently induced TapImmune into contracting with him and that she failed to credit or "twisted" his testimony. *See* Opp. at 8-9. Mr. Gardner does not, however, point to a single objective fact that is inconsistent with impartiality, and therefore, he has failed to meet his burden to demonstrate the arbitrator's partiality. The Court will not vacate the award on the basis of the arbitrator's alleged evident partiality.

   e. **Manifest Disregard of Law**

Finally, Mr. Gardner asserts that the arbitrator's decision shows manifest disregard of the law. Manifest disregard of the law is often called a "judicial gloss" on the statutory grounds for *vactur* in 9 U.S.C. § 10(a)(1)-(4). *See, e.g., Schwartz v. Merrill Lynch & Co.*, 665 F.3d 444, 451 (2d Cir. 2011); *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC,* 497 F.3d 133, 139 (2d Cir. 2007).

When a court reviews an arbitration award for manifest disregard of the law, such review "is 'highly deferential' to the arbitrators, and relief on such a claim is therefore 'rare.'" *STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC*, 648 F.3d 68, 78 (2d Cir. 2011) (quoting *Porzig*, 497 F.3d at 138). Courts "will not vacate an award because of 'a simple error in law or a failure by the arbitrators to understand or apply it' but only when a party clearly demonstrates 'that the [arbitrator] intentionally defied the law.'" *Id.* (quoting *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S,* 333 F.3d 383, 389, 393 (2d Cir. 2003)); *see also Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 121 n.1 (2d Cir. 2011). "A mere demonstration that an arbitration panel made 'the wrong call on the law' does not show manifest disregard; 'the award should be enforced if there is a *barely colorable justification* for the outcome reached.'" *Telenor Mobile Commc'ns AS v. Storm LLC*, 584 F.3d 396, 407 (2d Cir. 2009) (quoting *Wallace v. Buttar,* 378 F.3d 182, 190 (2d Cir. 2004) (alteration omitted; emphasis in *Wallace*).

A finding of manifest disregard of the law requires that a court consider "first, 'whether the governing law alleged to have been ignored by the arbitrators was well defined, explicit, and clearly applicable,' and, second, whether the arbitrator knew about 'the existence of a clearly governing legal principle but decided to ignore it or pay no attention to it.'" *Jock*, 646 F.3d at 121 n.1 (quoting *Westerbeke Corp. v. Daihatsu Motor Co., Ltd.,* 304 F.3d 200, 209 (2d Cir. 2002)).

Mr. Gardner once again relies on the New York Supreme Court's order denying TapImmune's motion for a preliminary injunction. He claims that because the court found that TapImmune had not demonstrated a likelihood of success on its fraud claims, and because he provided the court's decision to the arbitrator, the arbitrator's decision that TapImmune's fraud claims had merit shows manifest disregard of the law. *See* Opp. at 9-12.

But rather than making substantive arguments about "well defined, explicit, and clearly applicable" law which he believes the arbitrator ignored, Mr. Gardner simply provides a pages-long block quote from the state court's opinion. *See* Opp. at 10-12.

13

The arbitrator found that Mr. Gardner fraudulently induced TapImmune to enter into the consulting agreement. *See* Arbitration Award, Dkt. No. 6, Ex. D, at 1-4. In denying the motion for a preliminary injunction, the state court focused on TapImmune's argument that Mr. Gardner fraudulently induced TapImmune by making fraudulent promises regarding *future* conduct. *See* Opp. at 10. The court found that TapImmune had not demonstrated a likelihood of success on that claim because it had not known shown that Mr. Gardner's alleged statements were "collateral" to the agreement, as required by New York law. *See id.* But a claim for fraudulent inducement may be based on either "a false statement of present fact, or . . . a false statement of future intent which concerns a matter collateral to a contract between the parties." *Int'l CableTel Inc. v. Le Groupe Videotron Ltee,* 978 F. Supp. 483, 491 (S.D.N.Y. 1997); *see also id.* at 486-91. The arbitrator, unlike the state court, focused on Mr. Gardner's statements of *present* fact rather than *future* intent. *See* Arbitration Award, at 1-4.

The elements of a claim of fraudulent inducement under New York law are:

> (1) that the defendant made a representation, (2) as to a material fact, (3) which was false, (4) and known to be false by the defendant, (5) that the representation was made for the purpose of inducing the other party to rely upon it, (6) that the other party rightfully did so rely, (7) in ignorance of its falsity (8) to his injury.

*Computerized Radiological Servs. v. Syntex Corp.*, 786 F.2d 72, 76 (2d Cir. 1986) (quoting *Brown v. Lockwood,* 76 A.D.2d 721, 730, 432 N.Y.S.2d 186, 193 (2d Dept. 1980)). The arbitrator found that Mr. Gardner made representations about material facts that he knew to be false, for the purpose of inducing TapImmune to rely on those statements; that TapImmune did rely on those statements, thinking they were true; and that TapImmune was injured as a result. *See* Arbitration Award, at 4. These findings satisfy the elements of fraudulent inducement under New York law, thus, there is *at least* a "barely colorable justification" for the outcome reached by the arbitrator.

The Court will not vacate the award on the basis of manifest disregard of the law.

## V. CONCLUSION

For the reasons outlined above, TapImmune's petition to confirm the arbitration award is GRANTED, and Mr. Gardner's motion to vacate the award is DENIED. The Clerk of Court is directed to terminate the motion pending at Docket Number 13 and to close this case.

SO ORDERED.

Dated: July 8, 2015  
New York, New York

_____  
GREGORY H. WOODS  
United States District Judge